**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 1 0 2021

JAMES N. HATTEN, Clerk
By: ⟨signature⟩    Deputy Clerk

TRINAE WATKINS,

Plaintiff,

v.

UNITED PARCEL SERVICE
GENERAL SERVICES CO. and UPS
SUPPLY CHAIN SOLUTIONS
GENERAL SERVICES, INC.,

Defendants.

CIVIL ACTION NO.

JURY TRIAL DEMANDED

*1:21-CV-1985*

## **COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff Trinae Watkins (hereinafter "Plaintiff" or "Ms. Watkins") and hereby files this Complaint for Damages against Defendants United Parcel Service General Services Co. and UPS Supply Chain Solutions General Services, Inc. (hereinafter collectively "UPS" or "Defendants") showing this Court as follows:

## **NATURE OF THIS ACTION**

1. This is an action for race discrimination in violation of 42 U.S.C. § 1981 and

~ 1 ~

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"), and retaliation in violation of the ADEA and Title VII.

2. Ms. Watkins seeks injunctive and equitable relief, back pay and lost benefits, front pay or reinstatement, compensatory damages, punitive damages, liquidated damages, attorney's fees and costs for Defendants' violations of the ADEA, Title VII, and 42 U.S.C. § 1981.

## ADMINISTRATIVE PROCEDURE

3. On August 27, 2019, Mrs. Watkins filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (Charge No. 410-2019-08237) complaining of the discriminatory and retaliatory actions challenged in this Complaint.

4. Ms. Watkins seeks injunctive and equitable relief, back pay and lost benefits, front pay or reinstatement, compensatory damages, punitive damages, liquidated damages, attorney's fees and costs for Defendants' violations of the ADEA, Title VII, and 42 U.S.C. § 1981.

5. On February 10, 2021, Ms. Watkins received her Notice of Right to Sue from

the EEOC.

6. Ms. Watkins timely filed her Complaint for Damages within ninety (90) days of receiving her Notice of Right to Sue.

## JURISDICTION & VENUE

7. Plaintiff's claims present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343(a), and 42 U.S.C. § 2000e-5(f)(3).

8. Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) and pursuant to 28 U.S.C. § 1391(b) and (c), as every act of which Plaintiff complains occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

9. Plaintiff submits herself to the jurisdiction of this Court.

10. Defendant United Parcel Service General Services Co. is a foreign corporation that was registered with the Secretary of State to conduct business in the State of Georgia at all times relevant to the allegations in this complaint and may be served with process upon its registered agent, CSC of Cobb County, Inc., 192 Anderson Street, SE, Suite 125, Marietta, GA 30060.

11. Defendant UPS Supply Chain Solutions General Services, Inc., is a foreign

corporation that was registered with the Secretary of State to conduct business in the State of Georgia at all times relevant to the allegations in this complaint and may be served with process upon its registered agent, CSC of Cobb County, Inc., 192 Anderson Street, SE, Suite 125, Marietta, GA 30060.

12. At all times relevant to Plaintiff's claims, Defendants employed 15 or more employees for each working day in at least 20 or more calendar weeks, including Plaintiff.

13. At all times relevant to Plaintiff's claims, Defendants have been engaged in an industry affecting commerce within the meaning of Section 1 1(h) of the ADEA, 29 U.S.C. § 630(h).

## FACTUAL ALLEGATIONS

14. Plaintiff was employed by United Parcel Service General Services Co.

15. Plaintiff was employed by UPS Supply Chain Solutions General Services, Inc.

16. On May 1, 2006, Ms. Watkins, an African American woman over the age of forty (40), began working for UPS as a Business Analyst. She was hired to support the GBS PO application.

17. Sometime in 2010, Ms. Watkins continued in her role as Business Analyst and

was given the additional responsibility of writing functional requirement documents and was given more functional work in business analyst analysis.

19. Ms. Watkins was excelling at her job. She was the only person to pass her BA 101 and BA 102 exam on her first attempt.

20. Sometime in 2012, Ms. Watkins began working as a release manager under the leadership of Devi Sadagopan.

21. Sometime in 2018, Ms. Watkins was told that she should continue in her current role, but was also required to pick up some additional project management tasks.

22. While she was performing the role as Project Manager, which is considered a higher level position than Business Analyst, she was not given the pay raise associate with the Project Manager position nor was she given the official title.

23. In 2018, Mark Caniparoli, a White male, became the manager of Ms. Watkins team.

24. Also in 2018, Ron Chambliss an African American coworker, filed an EEOC complaint for race discrimination and retaliation.

25. In October 2018, Ms. Watkins was interviewed by Charles Eure in Human

Resources and she was specifically asked about Mark Caniparoli and whether he had racially discriminated against Mr. Chambliss.

26. Ms. Watkins told Mr. Eure that she believed that Mr. Caniparoli was being racially discriminatory to Mr. Chambliss because she had witnessed Mr. Caniparoli being demeaning to Mr. Chambliss and that he had also been racially discriminatory to Ms. Watkins by intentionally skipping over Ms. Watkins when it was her turn to talk during team meetings.

27. After Ms. Watkins spoke out about the race discrimination she witnessed and experienced at UPS, in early 2019, she began experience retaliation as a result.

28. For example, Ron Chambliss and Ms. Watkins were the only project managers who were required to write daily Stand up meeting notes. None of the other project managers were required to do so.

29. Ms. Watkins was not being included in key project management meetings despite being a de facto project manager and many Stand up team members were uncooperative.

30. Additionally, Ms. Watkins team leader, Sara Thorpe, told Ms. Watkins that she was asked by management to sit behind Ms. Watkins to watch her and

~ 6 ~

track her every move. Nobody else on the team was subjected to this.

31. On August 27, 2019, Ms. Watkins filed her EEOC charge of discrimination for the discrimination and retaliation she was subjected to at UPS.

32. Ms. Watkins performance began to be judged on a different, harsher standard than the other project managers.

33. After filing her EEOC complaint, Project Managers were asked to send out reports to management on their releases.

34. Ms. Watkins held to a harsher, stricter standard when it came to the format of the project release status reports.

35. Mr. Caniparoli would use Ms. Watkins formatting of the status reports to write her up.

36. Other Project Managers were not adhering to the format and they were not written up for it.

37. When Ms. Watkins would point out that other Project Managers were not adhering to the stricter format, she was ignored.

38. Ms. Watkins was held to a harsher, stricter standard when it came to Wrike updates as well.

39. Mr. Caniparoli consistently used the Wrike updates to discredit Ms Watkins

performance. Even though, Ms. Watkins own team leader, Sara Thorpe, told
her that her Wrike updates were good.

40. In fact, Ms. Watkins Wrike updates were better than most of Ms. Watkins
team members.

41. Ms. Watkins was placed on a Focused Coaching session which eventually
led to Ms. Watkins being placed on a Performance Improvement Plan (PIP).

42. On April 30, 2020, Ms. Watkins was fired from her job at UPS.

## COUNT I: AGE DISCRIMINATION

43. Ms. Watkins incorporates by reference each and every preceding paragraph
as if fully set forth herein.

44. Defendants discriminated against Ms. Watkins because of her age, in
violation of the ADEA, 29 U.S.C. §§ 621 *et seq.*

45. Defendants' discriminatory practices have deprived Ms. Watkins of
equal employment opportunities, wages, retirement, and other benefits,
and equal treatment in the terms and conditions of her employment, thus
damaging Ms. Watkins in an amount to be proven at trial.

46. Ms. Watkins is entitled to an award of back pay and benefits,
reinstatement or front pay, liquidated damages, injunctive relief,

attorney's fees, and all other appropriate damages, remedies , and other monetary and equitable relief available under the ADEA.

## COUNT II: RACE DISCRIMINATION

47. Ms. Watkins incorporates by reference each and every preceding paragraph as if fully set forth herein.

48. Defendants' discriminatory actions against Plaintiff because she is Black are in direct violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*.

## COUNT III: RETALIATION

49. Ms. Watkins incorporates by reference each and every preceding paragraph as if fully set forth herein.

50. Defendants' actions against Plaintiff following her complaints of discrimination on behalf of Mr. Chambliss were committed with reckless disregard for her right to be free from discriminatory treatment on account of her opposition to discriminatory practices and in violation of the ADEA, 29 U. S.C. §§621 *et seq* and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*.

51. Defendants' actions against Plaintiff following her filing an EEOC charge

against Defendants were committed with reckless disregard for her right to be free from discriminatory treatment on account of her opposition to discriminatory practices and in violation of the ADEA, 29 U. S.C. §§621 *et seq* and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

52. As a result of Defendants' discriminatory conduct, Ms. Watkins suffered lost wages and other benefits of employment, emotional distress, inconvenience, humiliation, damage to her career, and other indignities.

53. Defendants' discriminatory practices have deprived Ms. Watkins of equal employment opportunities, wages, retirement, and other benefits , and equal treatment in the terms and conditions of her employment, thus damaging Plaintiff in an amount to be proven at trial.

54. Defendants acted maliciously, willfully, wantonly, oppressively, and/or recklessly, toward Ms. Watkins, authorizing a punitive damages award against Defendants.

55. Because of Defendants' violations of Title VII and the ADEA, Ms. Watkins is entitled to an award of back pay and benefits, reinstatement or front pay, compensatory and punitive damages, injunctive relief, attorney's fees, and

all other appropriate damages, remedies, and other monetary and equitable relief available under all federal statutes providing remedies for violations of the ADEA and Title VII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and that the following relief be granted:

A. That the Court take jurisdiction of this matter;

B. That process be served;

C. That the Court award Plaintiff back pay and other lost benefits;

D. That the Court award Plaintiff front pay or other prospective relief;

E. That the Court award compensatory damages in an amount to be determined by the trier of fact;

F. That the Court award Plaintiff punitive damages in an amount to be determined by the trier of fact;

G. That the Court award Plaintiff her reasonable attorneys' fees and costs in this action;

H. That the Court grant Plaintiff the right to have a jury trial on all issues triable to a jury; and

I. That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 10th day of May, 2021.

Trinae Watkins
114 Chase Road NE
Huntsville, AL
Phone: (256) 658-0205